# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ERIC CHAVEZ,**

    **Plaintiff,**

**v.**                                                                  **No. 19-cv-0447 BRB/SMV**

**DAVID ANTHONY MORALES and**
**IVAN OSWALDO GARCES MARTINEZ,**

    **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

THIS MATTER is before me on Plaintiff's Motion for Default Judgment [Doc. 47], filed on June 9, 2020. Defendants responded on June 24, 2020. [Doc. 54]. Plaintiff replied on July 6, 2020. [Doc. 59]. The Honorable Bobby R. Baldock, Senior U.S. Circuit Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 58] at 2. I held oral argument on this Motion and two other discovery motions on July 10, 2020. [Doc. 61] (clerk's minutes). I have considered the briefing, the relevant portions of the record, the relevant law, and the oral argument. Being otherwise fully advised in the premises, I recommend that the Court **GRANT** Plaintiff's Motion for Default Judgment.

## BACKGROUND

On May 15, 2019, Plaintiff sued Defendants Martinez and Morales for damages resulting from an allegedly unconstitutional strip search. [Doc. 1]. Plaintiff successfully served each Defendant in May of 2019. [Docs. 4, 5].

I entered a Scheduling Order on January 22, 2020, setting a discovery deadline of May 20. [Doc. 29] at 2. Also on January 22, 2020, Plaintiff's counsel, Ms. Strickland, emailed defense counsel, Ms. Blake, requesting dates of availability for Defendants' depositions. [Doc. 41-1] at 1. After Ms. Blake did not immediately provide dates on which her clients were available, *see id.* at 2–4, Ms. Strickland's paralegal emailed Ms. Blake on April 27, stating Plaintiff's intention to depose Defendants before the May 20 discovery deadline, *id.* at 4. Having received no response to this email, on May 6, Ms. Strickland's paralegal sent Ms. Blake notices and subpoenas for depositions of each Defendant occurring on May 20. *Id.* at 5.

On May 14, Ms. Blake emailed Ms. Strickland's office, stating that the May 20 depositions conflicted with her daughter's high school graduation. *Id.* at 6. Ms. Strickland replied by email that she was "happy to try to get these [depositions] rescheduled." *Id.* at 7. Ms. Strickland asked Ms. Blake to inform her if she wanted to "move the depositions earlier in the week (or weekend is fine[,] too) or if [she] prefer[ed] sometime after May 20." *Id.* Ms. Blake did not respond to this request.

Having seen no response from defense counsel, on May 19, Ms. Strickland's paralegal emailed Ms. Blake exhibits to be used during the May 20 depositions. [Doc. 41-3] at 1. Ms. Blake responded, "We agreed to vacate these depositions due to my daughter's graduation event did we not?" *Id.* at 2. Ms. Strickland replied that they agreed to *attempt to* reschedule the depositions, but because Ms. Blake did not provide alternative dates as requested, Plaintiff did not reschedule them. *Id.* at 3. Defendants did not move for a protective order or move to quash the subpoenas, and they did not file any notice of non-appearance. The record reflects no action taken by Defendants to vacate the depositions.

On May 20, Morales failed to appear for his morning deposition, though Martinez appeared for his afternoon deposition. Plaintiff could not depose Martinez, however, because Ms. Blake appeared for neither deposition. The court reporter assessed a no-show fee for each deposition. [Doc. 41-4] at 1–2. I held a status conference two days later, during which Ms. Blake for the first time informed me that she recently had "been unable to reach Defendant Morales." [Doc. 42] at 1 (clerk's minutes). On the same day, Plaintiff filed his Motion for Sanctions Regarding Depositions, requesting sanctions for the failures of Ms. Blake and Morales to appear for the May 20 depositions. *See* [Doc. 41].

Plaintiff issued an amended notice of deposition, scheduling Morales' second deposition for June 9. [Doc. 47-2] at 4. At some point in May or early June, Ms. Blake attempted to contact Morales by mail, certified mail, email, and telephone. [Doc. 44] at 2. Morales responded to none of these communications. Ms. Blake also retained an investigator to find Morales. *See* [Doc. 47-4] at 1. The investigator "spoke to a man on May 31, 2020[,] who he believed to be David Anthony Morales. The investigator hand-delivered a letter [to the man] requesting that he contact [Ms. Blake] immediately." *Id.* But as of June 1, Ms. Blake had not heard from Morales, and she could not guarantee to Ms. Strickland that he would appear at his June 9 deposition. *Id.* at 1–2. Because she could not contact Morales after numerous attempts, Ms. Blake believed she had "exhausted [her] ability to reach out to him." *Id.* at 2. Additionally, Plaintiff's process server unsuccessfully attempted to serve Morales. [Doc. 47] at 3.

The parties deposed Martinez on June 4. [Doc. 46] at 2. Morales did not appear for his June 9 deposition. *Id.* Plaintiff again moved for sanctions against Morales on June 9, arguing that his failure to attend his own deposition justified imposition of a default judgment under Rule 37(d).

[Doc. 47]. On July 10, I held oral argument on this Motion, in addition to the Motion for Sanctions Regarding Depositions. [Doc. 61]. Neither Ms. Blake nor Ms. Strickland has had contact with Morales since he failed to appear for the May 20 deposition. However, at some point during discovery, Defendants produced a written statement from Morales detailing his version of the search, as well as a recording of an independent interview with Morales regarding the events. *See* [Doc. 54] at 3.

At the July 10 oral argument, I granted in part Plaintiff's Motion for Sanctions Regarding Depositions. [Doc. 61] at 1. I found that Morales violated Rule 37(d) by failing to appear for his May 20 deposition and ordered Ms. Blake to pay the no-show fee. *See Id.*; [Doc. 62] at 1–2. Now I must consider whether to recommend imposition of a default judgment against Morales for failing to appear at both the May 20 and June 9 depositions.

## LEGAL STANDARD

"The court . . . may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A). These sanctions may include a default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A), (d)(3). Sanctions must also include requiring the disobedient party or his attorney to "pay the reasonable expenses, including attorney's fees, caused by the failure [to appear], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).[1]

---

[1] Defendants imply that any failure to appear for the May 20 depositions was substantially justified because defense counsel had thought the depositions were cancelled. [Doc. 44] at 4. The substantially justified test applies only to an award of expenses and attorney's fees, not other sanctions like default judgments. *See* Fed. R. Civ. P. 37(d)(3).

## ANALYSIS

Plaintiff argues that Morales violated Rule 37(d) by failing to appear for two noticed depositions. [Doc. 47] at 2–4. He requests that the Court impose a default judgment against Morales because Morales has willfully refused to participate in the case, interfering with discovery and prejudicing Plaintiff. *Id.* at 4. Defendants primarily oppose sanctions on four grounds. First, they imply that because Ms. Blake reasonably thought the May 20 depositions had been cancelled, the Court cannot order sanctions related to those depositions. *See* [Doc. 44] at 4. Second, Defendants argue that the Court should not enter a default judgment against Morales because Plaintiff has not shown that he willfully avoided his depositions. [Doc. 54] at 1. They believe that he may have failed to receive notice of the depositions or defense counsel's communications because he failed to appear for his depositions and "he [might] no longer [be] at the address and phone number his counsel was provided." *Id.* Third, Defendants argue that Plaintiff suffered little prejudice from Morales' non-appearances because Plaintiff already has (1) Morales' written statement, (2) the recording of an independent interview with Morales about the strip search, and (3) Martinez's deposition testimony. *Id.* at 3. Finally, Defendants assert that "there are numerous lesser sanctions or orders the [C]ourt could impose, such as first directing Mr. Morales to appear for [a] deposition, before entering default judgment against him." *Id.* at 4.

Morales twice violated Rule 37(d). He failed to appear for two properly noticed depositions. First, he failed to appear for his noticed May 20 deposition. *See* [Doc. 41-2] at 4. A notice of deposition compels a party to attend. *See* Fed. R. Civ. P. 30(a), (b)(1); Fed. R. Civ. P. 37(d). Though Ms. Blake notified Ms. Strickland of her conflict with the May 20 depositions, a "party cannot unilaterally cancel a properly noticed deposition." *Panzer v. Swiftships, LLC*, 318

5

F.R.D. 326, 328 (E.D. La. 2016).  "Further, 'parties may not escape sanctions simply by notifying the attorney who noticed the deposition that they will not appear.'" *Id.* (quoting *Peyman v. Ryan*, No. 2:09-CV-01384-KJD, 2011 WL 976925, at *1 (D. Nev. Mar. 18, 2011)).  Though Ms. Strickland was amenable to moving the depositions, because Ms. Blake never responded to Ms. Strickland's request for alternative dates, the May 20 depositions were never cancelled.  If Defendants wanted to vacate the May 20 depositions, they should have filed a motion to quash the subpoenas or a notice of non-appearance and a motion for a protective order.  *See DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 605 (N.D. Fla. 2019); *Panzer*, 318 F.R.D. at 329.

Second, Morales failed to appear for his June 9 deposition, despite Plaintiff's properly noticing it.  *See* [Doc. 47-2] at 4.  He therefore twice failed to appear for his deposition, warranting sanctions under Rule 37(d).

I recommend that the Court enter default judgment against Morales.  Before awarding a default judgment, courts must balance five factors: (1) the degree of actual prejudice to the moving party, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the Court had warned the disobedient party in advance that its actions could result in judgment against it, and (5) the efficacy of lesser sanctions.  *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159–60 (10th Cir. 2013) (applying the *Ehrenhaus* test to a default judgment imposed under Rule 37).  "Courts disfavor default judgments because 'the court's power is used to enter and enforce judgments regardless of the merits of the case, purely as a penalty for . . . procedural error[s].'" *Pinon v. Watkins*, No. 12-cv-0209 RB/RHS, 2012 WL 13076242, at *1 (D.N.M. Aug. 6, 2012) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

"[D]efault judgment must be 'viewed as available only when the adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Cessna Fin. Corp.*, 715 F.2d at 1444). It "should be used only when a party's noncompliance is due to 'willfulness, bad faith, or any fault of the [disobedient party]' and not when a party is unable to comply with a discovery order." *Klein-Becker USA, LLC*, 711 F.3d at 1159 (alteration in original) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).

      A balance of the *Ehrenhaus* factors weighs in favor of granting a default judgment here. Considering the first two factors, Morales' non-appearances for two depositions have prejudiced Plaintiff's ability to proceed with the case and have interfered with the judicial process. It goes without saying that Plaintiff's inability to depose Morales has prejudiced Plaintiff's ability to proceed with his claims against Morales. Morales has twice thwarted the discovery process, and his failure to communicate with counsel has placed this case at a standstill. Defendants argue that Plaintiff may proceed against Morales without his deposition because Plaintiff has Morales' written statement and a recording of an independent, investigative interview with Morales, in addition to Martinez's deposition testimony. [Doc. 54] at 3. Yet, according to Plaintiff's counsel, Morales' written statement is brief and goes into little detail about the events.[2] Plaintiff has had no opportunity to examine Morales about the written statement or interview. It is unclear whether the statement was made under oath. Plaintiff's counsel has had no opportunity to cross-examine Morales about the statement or to test his credibility. Moreover, Defendants neither identify the specific testimony from Martinez's deposition that Plaintiff may use nor explain why Martinez's

---

[2] At oral argument, Plaintiff's counsel explained that, in his written statement, Morales apparently simply denies that a public strip search occurred, with little further detail.

7

testimony substitutes for an examination of Morales.  *See id.*  The first two *Ehrenhaus* factors favor entering a default judgment.

Third, Morales' culpability weighs in favor of granting Plaintiff's Motion for Default Judgment.  I recognize, as Defendants argue, that since around mid-May of 2020, the parties have failed to locate Morales, meaning that he could have lacked actual notice of the May 20 and June 9 depositions.  *See id.* at 1–2.  Defense counsel states that on May 31, her investigator spoke with a man "who he believed to be David Anthony Morales," delivering a letter to him asking him to call her.  [Doc. 47-4] at 1.  Yet, Morales did not call defense counsel as requested, *id.*, and the investigator only "believed" the man was Morales, *id.*

Even if Morales lacked actual notice of the depositions, however, he still willfully chose not to participate in this case.  That choice is what caused any alleged lack of notice.  Ms. Blake sent to Morales "correspondence via U.S. Mail, Certified Mail, and email[;] [left] several phone messages[;] and retain[ed] an investigator to locate him."  [Doc. 44] at 2.  Morales responded to none of these attempts to communicate with her.  *Id.*  Ms. Blake feels that she has "exhausted [her] ability to reach out to him."  [Doc. 47-4] at 2.  Morales knew that Plaintiff had a lawsuit against him; Plaintiff's process server personally served him on May 26, 2019, [Doc. 5] at 1, and defense counsel first notified the Court that she had lost contact with Morales on May 22, 2020—months after the litigation began,[3] *see* [Doc. 42] (clerk's minutes).  It is highly unlikely that Morales simultaneously changed his mailing address, email address, and phone number, and simply forgot

---

[3] At oral argument, defense counsel wondered whether Morales understood the nature of the present lawsuit and his obligation to participate in the case.  This vague suggestion, without more, does not lessen Morales' culpability. Additionally, I infer that Morales has the capacity to understand his legal obligations; he is an adult, his counsel likely informed him of his litigation obligations upon representing him, and he has held at least one position as a correctional officer.  *See* [Doc. 1] at 2.

to notify his attorney. It is far more likely that he willfully severed all contact with Ms. Blake. By choosing to ignore his attorney, he became responsible for any delays in the case caused by that choice. "[T]he adversary process has been halted because of an essentially unresponsive party." *Cessna Fin. Corp.*, 715 F.2d at 1444.

The fourth factor—whether the Court had warned Morales prior to his deposition non-appearances that failure to appear would result in a default judgment—weighs against awarding this sanction; the Court had not so warned him. Yet, I assign little weight to this factor because Morales should have foreseen that his failure to participate in this case would leave the Court with little choice but to enter judgment against him.

Finally, the ineffectiveness of lesser sanctions favors entering a default judgment. As explained, Morales has failed to respond to his attorney, failed to appear for properly noticed depositions, and appears to be unreachable. If the Court simply imposed a monetary sanction, there is no reason to believe he would receive notice of it or pay it. That he failed to appear for two properly noticed depositions suggests that he would not likely attend a third deposition, even if ordered by the Court. It is highly unlikely that any other sanction would convince Morales to participate in this case.

Four of the five *Ehrenhaus* factors weigh in favor of imposing a default judgment. Though the Court had not warned Morales of the consequences for failing to attend his depositions, Morales has effectively halted Plaintiff's ability to proceed and it is likely that no other sanction would incentivize him to suddenly participate. I therefore recommend that the Court impose a default judgment against Morales.

Defendants make two additional arguments, each detached from the legal standards articulated in Rule 37(d) and *Ehrenhaus*.  First, Defendants suggested at oral argument that because they intend to file a motion for summary judgment, the Court should reserve imposing a default judgment until the Court decides that motion.  No authority suggests that a court should decline to impose a default judgment simply because the party may file a hypothetical motion for summary judgment at some point in the future.  Normally, the Court need only assure itself that a plaintiff has stated a plausible claim, *see Mrs. Condies Salad Co. v. Colo. Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1218 (D. Colo. 2012), and it has done so here, *see* [Doc. 58] at 2.

Second, Defendants argue, "[E]ntry of default would . . . adversely impact [Morales's] co-Defendant, Ivan Martinez" because the "jury will likely be biased against Mr. Martinez when considering liability knowing that the Court has already entered judgment against Mr. Morales." [Doc. 54] at 4.  Yet, Defendants cite no authority suggesting that a court may consider the fairness to co-defendants when entering a default judgment.  Additionally, a jury is unlikely to show bias against Martinez if the Court enters a default judgment against Morales.  Defendants' concerns are speculative, and if such evidence even reached the jury, a limiting instruction could solve their concerns.[4]

Defendants did not raise a related issue: whether the Court can impose a default judgment before adjudicating the liability of the non-defaulting Defendant.  The Supreme Court has held that "when multiple defendants are alleged to be jointly liable and fewer than all defendants

---

[4] Offhand, I see little reason to believe the jury would even be told that there is a default judgment against Morales. They might speculate as to why Morales is not a defendant, but that is something the trial judge can manage with appropriate instructions.

10

default, the district court may not render a liability determination as to the defaulting parties unless and until the remaining defendants are found liable on the merits." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (citing *Frow v. DeLaVega*, 82 U.S. (15 Wall.) 552, 554 (1877)). In an unpublished decision, the Tenth Circuit extended this rule to "situations where multiple defendants have closely related defenses." *Wilcox v. Raintree Inns of Am., Inc.*, No. 94-1050, 76 F.3d 394, 1996 WL 48857, at *3 (10th Cir. Feb. 2, 1996). In such a situation, courts normally deny the motion for default judgment without prejudice, waiting until after determining liability of the non-defaulting defendants. *See, e.g.*, *Thompson v. Gammon*, No. 12-cv-0276 MCA/SMV, 2015 WL 11120636, at *2 (D.N.M. Mar. 17, 2015). Courts do so to avoid the possibility of inconsistent judgments or damages awards. *See Wilcox*, 1996 WL 48857, at *3. Here, however, because Defendants neither cited to *Frow* or *Wilcox* nor explained why Martinez's defenses closely relate to those of Morales, they have waived any argument in favor of applying the *Frow* and *Wilcox* rules here. Nonetheless, to reduce the risk of an inconsistent damages award, I recommend that the Court decline to "conduct a damages hearing on the [d]efault [j]udgment against [Morales] until . . . the merits of [Plaintiff's] claims against [Martinez] are decided." *Tilga v. United States*, No. 14-cv-0256 JAP/RHS, 2015 WL 13667048, at *4 (D.N.M. Jan. 2, 2015) (declining to apply *Wilcox* rule but deferring holding the damages hearing).

      I therefore recommend that the Court impose a default judgment against Morales. Because Plaintiff's Complaint does not request damages in a "sum certain," Fed. R. Civ. P. 55(b)(1); *see* [Doc. 1] at 5, I recommend that the Court, after a determination of Martinez's liability, "conduct

hearings or make referrals . . . to . . . determine the amount of damages" awardable to Plaintiff or "establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2)(B)–(C).[5]

## CONCLUSION

**IT IS RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Default Judgment [Doc. 47] be **GRANTED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

[5] Some Tenth Circuit authority suggests that, at least when entering a default judgment under Rule 55, a court must assure itself that subject-matter and personal jurisdiction exist. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The parties stipulated that the Court has jurisdiction over the action and subject matter. [Doc. 14] at 2 (Joint Status Report). Subject-matter jurisdiction exists because Plaintiff brings his claims under 42 U.S.C. §§ 1983 & 1988. [Doc. 1] at 1. His claims therefore arise under federal law. *See* 28 U.S.C. § 1331 (2018). Moreover, Defendants waived any challenges to personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2), (h)(1); [Doc. 7].